IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROY ALLEN GREEN, | : | 1:11-cv-124 |
| | : | |
| Petitioner, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | Hon. Martin C. Carlson |
| WARDEN B.A. BLEDSOE, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

**February 27, 2012**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Martin C. Carlson (Doc. 9), filed on February 8, 2012, which recommends that *pro se* Petitioner Roy Allen Green's ("Petitioner" or "Green") petition for writ of habeas corpus be denied and that a certificate of appealability should not issue. Petitioner filed objections to the R&R on February 21, 2012. For the reasons set forth below, the Court will adopt the R&R in its entirety.

**I.      STANDARD OF REVIEW**

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

## II.   BACKGROUND

In this habeas corpus petition, Green complains that prison officials at the United States Penitentiary, Lewisburg[1] acted in contravention to his due process rights by both curtailing his recreation privileges and then separately disciplining him with the loss of good time and other privileges after he stabbed a fellow inmate

---

[1] Green is designated to the Special Management Unit ("SMU") at USP-Lewisburg. Inmates in the SMU are the most dangerous and disruptive inmates in the Bureau of Prisons, who have been unable to successfully adjust to the institutional environment elsewhere. Thus, the movements and general activities of SMU inmates are highly structured, and include no less than five hours of exercise each week, typically inside of an enclosed recreation pen.

78 times in a recreation area at the prison on May 27, 2010.[2]  Recognizing the security threat Green obviously posed to his fellow inmates, on the evening of the attack, he was presented with notice of an incident report, which started the procedure by which Green's recreation privileges were curtailed.  The following day, a due process hearing was conducted, during which Green was informed of the charges brought against him and was advised that the hearing was being conducted for the sole purpose of determining whether his recreation privileges should be curtailed.  At the hearing, Green presented no evidence or documents.  The Disciplinary Hearing Officer ("DHO") then reviewed the evidence of the case, which consisted of multiple eyewitness reports identifying Green as one of the knife-wielding assailants in this case.  The DHO concluded that Green's conduct threatened the health, safety and orderly running of the institution and thus recommended that Green's exercise privileges be immediately curtailed for five days, in accordance with prison policy, a recommendation that was adopted by the warden.

---

[2] Magistrate Judge Carlson describes the attack in detail at page 2 of the R&R.  In brief, Green and another inmate brutally assaulted a third inmate inside a recreation cage, stabbing the victim a total of 78 times in the neck, chest and abdomen, wounds which ruptured the victim's aorta and caused a massive loss of blood.  Fortunately, staff was able to intervene and the victim survived.

While the May 28, 2010 due process hearing resolved the immediate issue of Green's on-going access to the exercise yard, the larger issue of appropriate disciplinary proceedings for the stabbing remained to be addressed.  This disciplinary infraction was taken up at a DHO hearing held on August 4, 2010.  Green was provided notice of the proceeding on June 29, 2010 and was advised of his rights in connection with the proceeding.  Green exercised his right to have the assistance of a staff member at the hearing, and also provided the DHO with a statement written by him protesting further discipline for the stabbing in view of the previously imposed loss of 5 days of recreation time.  Green alleged that he had already been disciplined enough and stated that "I feel rehearing it [this assault] is inappropriate."  Green declined to make any further comments regarding the incident.  The DHO then reviewed the evidence pertaining to the assault and concluded that Green had committed the prohibited act of attempting to kill a fellow prisoner and possessing a weapon.  The sanctions imposed were as follows:  For the attempted killing, Green was sanctioned with 41 days disallowance of good conduct time; 180 days forfeiture of non-vested good time; 60 days disciplinary segregation; 4 years loss of commissary, telephone and visiting privileges.  For Green's knife possession, the sanctions imposed were 41 days disallowance of good conduct time and 60 days disciplinary segregation.

Green then appealed the DHO's sanctions, and the heart of that appeal and this petition are one and the same: a claim that conducting the two disciplinary hearings in some way offended due process and double jeopardy concerns. In response to his administrative appeals, Green was informed by prison officials that the purpose of the May 28, 2010 hearing was "solely to determine if your actions on May 27, 2010 warranted the loss of recreation privileges for five days. You did not receive any sanctions at this hearing, nor were . . . you found to have committed a prohibited act." (Doc. 6-1, Ex. G). Green's administrative appeals were therefore denied, and Green then filed the instant petition.

## III. DISCUSSION

In his thorough and typically cogent R&R, Magistrate Judge Carlson recommends that Green's petition be denied. Specifically, the Magistrate Judge concluded that there was no double jeopardy prohibition against the prison conducting two separate hearings to prospectively restrict prison recreation privileges and to subsequently discipline past misconduct. Magistrate Judge Carlson also determined that the petition fails on the merits because Green was afforded his procedural due process at the hearings and the findings of misconduct were supported by adequate evidence.

As noted above, Petitioner filed objections to the R&R on February 21, 2012. Specifically, he argues that he did not pose a security risk and as such there was no need to conduct a DHO hearing on May 28, 2010 to curtail his recreation privileges.[3] He also maintains his position that by being subjected to two DHO hearings arising out of the same incident that the principles of double jeopardy were violated.

As to the first area of Petitioner's objections, we disagree with his contention that he did not pose a security threat to the institution such that his access to the recreation yard did not need to be immediately addressed by the May 28, 2010 hearing. This is plainly not true. Again, Petitioner and his cohort launched a brutal assault on another inmate while inside a recreation pen at USP-Lewisburg, stabbing the victim 78 times and causing near-fatal wounds. By not immediately addressing Petitioner's actions, the security of the institution was almost certainly at risk. Accordingly, we do not find that the decision to conduct an expedited DHO hearing on May 28, 2010 to be inappropriate in any fashion.

Next, we address Petitioner's contention that subjecting him to two separate DHO hearings violated principles of double jeopardy. As aptly noted by Magistrate

---

[3] A large portion of Green's objections contain general complaints about the recreation procedures at USP-Lewisburg. Since Green's opinions concerning USP-Lewisburg's recreation policies are not germane to the issues of the petition, we shall not address them herein.

Judge Carlson, it is well-established that "a prison disciplinary hearing is not a prosecution for Double Jeopardy Clause purposes. Disciplinary sanctions imposed by prison authorities for infractions of prison regulations to not bar a subsequent criminal prosecution." *United States v. Stuckey*, 441 F. 2d 1104 (3d Cir 1971). Furthermore, it is entirely clear that prison officials may conduct successive, related hearings for the purpose of addressing the discipline and security concerns that arise in a prison setting. *See Meeks v. McBride*, 81 F. 3d 717 (7th Cir. 1996)("to apply double jeopardy protection to prohibit a subsequent disciplinary hearing . . . would impose an extreme burden on prison administrators. If an . . . earlier hearing were to preclude a subsequent hearing on the same charge, the ovverriding interest of prison administrators to act swiftly to maintain institutional order could be compromised . . .").

The matter *sub judice* presents the Court with a compelling paradigm of the type where successive prison proceedings are entirely appropriate. Prison administrators acted swiftly on May 28, 2010 to determine Green's ability to rejoin his fellow inmates and enjoy recreation privileges immediately after he tried to kill another inmate in the recreation yard. The law did not, in any way, prohibit prison administrators from taking further action against Green to sanction him for the violent and brutal stabbing in the recreation yard. Accordingly, we agree fully with

Magistrate Judge Carlson's conclusions that principles of double jeopardy were not violated and accordingly Green's petition must be denied on the merits. An appropriate Order shall issue.